UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| HOWARD GARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00076-JMS-MG |
| | ) | |
| RICHARD BROWN, | ) | |
| FRANK VANIHEL, | ) | |
| KEVIN GILMORE, | ) | |
| JERRY SNYDER, | ) | |
| CHARLES DUGAN, | ) | |
| ROBERT CARTER, | ) | |
| JAMES BASINGER, | ) | |
| MICHAEL OSBURN, | ) | |
| JACK HENDRIX, | ) | |
| ANDREA MASON, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Exhaustion Defense Following *Pavey* Hearing**

Howard Garrett, an inmate of the Indiana Department of Correction ("IDOC"), is suing Defendants for allegedly violating his due process right to meaningful and periodic reviews of his placement in department wide restrictive status housing, and his Eighth Amendment right to adequate conditions of confinement. These conditions included the cleanliness of his cell, his access to recreation, the water temperature of the showers, and his ability to use the phone. Dkt. 100 at 1.

Defendants moved for summary judgment asserting that this action is barred because Mr. Garrett failed to exhaust his available administrative remedies before filing this lawsuit. *See* 42 U.S.C. § 1997e. The motion for summary judgment was denied because there were material

facts in dispute, dkt. 56, and a hearing was held consistent with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve this affirmative defense.

The Court held the evidentiary hearing on November 8, 2023. Mr. Garrett appeared in person and by retained counsel, Arie J. Lipinski. Defendants—Richard Brown, Frank Vanihel, Kevin Gilmore, Jerry Snyder, Charles Dugan, Robert Carter, James Basinger, Michael Osburn, Jack Hendrix, and Andrea Mason—appeared by counsel Alexander Thomas Myers, Brandyn Lee Arnold, and Stephanie Michelle Davis. Exhibits 1-58, 61-70, 74, 100-102, 104-109 and 122-132 were admitted into evidence. Dkt. 98 at 35: 17-23. Testimony was solicited from witnesses 1) Howard Garrett, 2) Matthew Leohr, 3) Carla Coakley, 4) Jack Hendrix, 5) Jennifer Fischer, 6) Jerry Snyder, 7) Jerricha Meeks, 8) Mary Sims, 9) Sarah Clarke and 10) Charles Dugan. *See* dkt. 98.

For the reasons explained in this Order, the Court finds that Defendants have met their burden of proof by establishing that Mr. Garrett failed to pursue available administrative remedies before filing this lawsuit. The classification appeal process was available to Mr. Garrett to challenge his continued placement in segregation, and the grievance process was available to Mr. Garrett to grieve his conditions of confinement.[1]

## I. Applicable Law

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a);

---

[1] Mr. Garrett argues: "When construing the facts in the light most favorable to Mr. Garrett, Defendants have failed to establish by a preponderance of the evidence that Mr. Garrett failed to exhaust administrative remedies." Dkt. 100 at 10-11. But Mr. Garrett is mistaken regarding the applicable standard at this stage of the litigation. While Defendants continue to have the burden of establishing their affirmative defense, it is now up to the Court to make factual findings based on its review of the evidence and the credibility of the witnesses. The evidence is not taken in the light most favorable to Mr. Garrett at this stage in the proceeding.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Garrett] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). The Supreme Court recognizes at least three circumstances where an administrative remedy is "not capable of use" and thus unavailable: (1) where "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id*. at 643; (2) where the "administrative scheme" is "so opaque" as to be practically "incapable of use," *id*.; and (3) where "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. "[A]n inmate is required to exhaust those, but only

3

those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. at 642 (internal quotation omitted).

## II. Findings of Fact and Conclusions of Law

The following facts are found to be true by a preponderance of the evidence. The Court makes these findings based on the parties' stipulated facts, testimony, and the exhibits presented during the hearing and at summary judgment.

Plaintiff Howard Garrett is an Indiana prisoner in the custody of the IDOC. Dkt. 78 ¶1. He was transferred to Wabash Valley Correctional Facility on October 20, 2017, and placed on department wide <u>disciplinary</u> restrictive status housing after he stabbed a staff member at Indiana State Prison ("ISP"). Dkt. 42-6 at ¶ 10; dkt. 46-2. In July 2018, after Mr. Garrett served his disciplinary sanction, he was transferred from department wide disciplinary restrictive status housing to department wide <u>administrative</u> restrictive status housing ("DWRH"). Dkt. 42 at 13; dkt. 46-2. He remained on DWRH through February 2020. Dkt. 78 at ¶¶ 6, 11.

### A. Classification Reviews

The IDOC follows a Classification Decisions Appeal Process set forth in "Policy and Administrative Procedure 01-04-101 Adult Offender Classification." Dkt. 78 ¶ 3. Pursuant to IDOC policy 01-04-101, which was in effect during the entirety of Mr. Garett's placement on restrictive status housing, an inmate may administratively appeal when he receives a classification decision, including placement and continued placement on restrictive status housing, from the Supervisor of Classification by submitting a written appeal using State Form 9260, "Classification Appeal," within ten (10) working days from the date that the offender received the classification decision. Dkt. 78 ¶ 3. Inmates are able to appeal both disciplinary and administrative restrictive housing decisions. Dkt. 100 at 3 (citing dkt. 98 at 81-82).

Mr. Garrett concedes that he received numerous classification reviews while incarcerated at WVCF. Dkt. 100 at 3. Mr. Garrett received classification appeal notices following his 30-day reviews and 90-day reviews. *Id.*

The 30-day review classification appeal notices provided on or after February 1, 2019, include the following language:

> Intra-Facility placement in Facility Restrictive Housing or Protective Custody Unit may be appealed by submitting a Classification Appeal, State Form 9260, within ten (10) working days of the review to the facility Warden.
>
> Facility transfer to Department Wide Restrictive Housing or Protective Custody Unit may be appealed by submitting a Classification Appeal, State Form 9260, within ten (10) working days of review to the Deputy Commissioner of Operations. Classification Appeal forms are available through your assigned unit team staff member(s) or the Law Library.
>
> Concerns regarding the findings and/or sanctions Authorized by the Disciplinary Hearing Board any be appealed to the Warden by submitting the Disciplinary Appeal form, State Form 39587. Disciplinary Appeal forms are available through your assigned unit team staff member(s) or the Law Library.
>
> Signature of case worker [signature] Date (month, day, year) 2-7-20
> Printed name of case worker: Charles Dugan
> Date noted in Offender Case Management System (OCMS) (month, day, year) 2-7-20
> Signature of offender [signature] Howard Garrett Date (month, day, year) 2-7-20
> DISTRIBUTION: Original - Offender Packet; Copy - Offender

Dkt. 42-12 at 1 (30-day classification review form completed February 7, 2020); *id.* at 12 (review dated February 1, 2019). Before that date, the opportunity to file an appeal was relayed verbally. Dkt. 98 at 143:22-144:14.

The 90-day classification reviews provided the following appeal information:

> Placement on Department-Wide Administrative Status Housing may be appealed by submitting a Classification Appeal (SF 9260) within ten working days of admission to a Department-Wide Restrictive Status Housing Unit or any subsequent Classification action (i.e. 30 Day or 90 Day reviews).
>
> This review was prepared by C. Dugan, Caseworker 4, Secure Confinement Unit. If there are any questions regarding this report, they may be directed to either the Unit Team Manager or the Casework Manager.

*Id.* at 9 (90-day classification review form completed in May 2019).

Mr. Garrett did not file a classification appeal regarding his placement in restrictive housing. Dkt. 78 ¶4. Mr. Garrett concedes that he did not successfully complete the Classification Decisions Appeal Process with respect to the issues raised in this lawsuit. Dkt. 100 at 3.

5

**B. Availability of Classification Appeals Process**

Numerous potential explanations for Mr. Garrett's failure to pursue a classification appeal were identified at summary judgment. Dkt. 56 at 11-17. Appropriately, Mr. Garrett has narrowed the scope of his arguments following the evidentiary hearing. He now argues that the Court should find that Mr. Garrett was unaware of (or did not understand) the process to challenge his placement in segregation and that he believed a classification appeal would be challenging the disciplinary decision that initially led to his confinement in segregation. Dkt. 100 at 9. Mr. Garrett further argues that even if he was aware of the process, that he was not required to file a classification appeal because it was a dead end.[2] Each of these arguments is discussed below.

1. *Notification of Classification Appeals Process*

First, the Court finds that Mr. Garrett was advised of the classification decisions appeals process. Inmates in restrictive housing have the applicable grievance and classification appeal processes explained to them during admission and orientation. Dkt. 98 at 94:25-95:3. These inmates are able to access these policies by submitting a request to the law library. Dkt. 98 at 95:4-13. In addition, inmates in restrictive housing are able to access the grievance and classification appeal forms through their caseworker, other unit team staff, or the law library. Dkt. 98 at 37:22-24, 56:20- 57:14, 78:12-19, 95:17-20.

These findings are consistent with Caseworker Dugan's and Meeks's testimony. Mr. Dugan testified that he was Mr. Garrett's caseworker for much of 2017 to 2020. Dkt. 98 at 145:1-5. While Mr. Garrett's caseworker, Mr. Dugan walked the ranges daily and would routinely inform inmates that they could appeal a review or classification hearing. *Id.* 146-147. If an inmate requested an

---

[2] Mr. Garrett does not seek a finding that he did not file a classification appeal because he feared retaliation. *See* dkt. 100 at 7-11.

appeal form, Mr. Dugan would provide the form, and after it was completed turn the form in for the inmate. *Id.* 147-148. The Court finds Mr. Dugan's testimony credible. Similarly, Ms. Meeks was the casework manager who provided Mr. Garrett's orientation as he transitioned from disciplinary to administrative segregation. Dkt. 98 at 105:2-107:4. She testified that she recalled personally notifying Mr. Garrett of the availability of an appeal process to challenge his placement in segregation, including how to request full reviews of classification decisions. *Id.* at 107:25–108:24. The Court also finds Ms. Meeks's testimony credible.

Finally, this finding is not inconsistent with Mr. Garrett's testimony at the hearing that his "memory has deteriorated over the years." Dkt. 98 at 22. The Court accepts Mr. Garrett's testimony that at the time of hearing his memory was "very bad" and that he does not remember whether the process for filing appeals was ever explained to him. Dkt. 98 at 21:17-19.

2. *Mr. Garrett's Understanding of Classification Appeals Process*

Although Mr. Garrett's memory has deteriorated, the Court finds that during the time he was in DWSH he was competent to understand and follow the classification appeals process. This finding is based on the fact that the process is not particularly complex and Mr. Garrett's demonstrated ability to complete both the Actions, Consequences, and Treatment ("ACT") program and an anger management packet during the relevant timeframe.

First, the appeals process was not complex. Mr. Garrett simply needed to request and complete a classification appeal (SF 9260). He could request this form from his caseworker. These instructions were included on the 30-day and 90-day review forms on or after February 1, 2019. Dkt. 42-12 at 12. Mr. Snyder testified, " the classification appeal process is as simple as writing a request slip to your caseworker that you want one. They will give it to you. And whatever action classification department has done that you don't agree with, all you have to do is state what that

was. Like, if you requested to be released from the unit and they denied it, that's all you've got to put. I mean, it's a very simple process." Dkt. 98 at 96:8-14. In addition, if Mr. Garrett had issues understanding the policies or completing the relevant forms, he could seek assistance from his or her assigned caseworker. Dkt. 98 at 33:11-15, 95:21-96:2.[3]

Second, the Court rejects Mr. Garrett's prior testimony by affidavit that his psychological and mental condition and other cognitive issues impeded his ability to file a classification appeal while in restricted housing. *See* dkt. 46-1 at ¶5. Mr. Garrett earned his GED while in custody. Dkt. 98 at 16. During his time in restrictive housing, Mr. Garrett successfully participated in the ACT program and completed an anger management packet. Dkt. 98 at 22:5-18, 91:4-7. The ACT program is designed to give inmates tools to evaluate their actions and the consequences of those actions in order to make better decisions. *Id.* at 91:6-20. The program lasts for approximately one year and requires inmates to read various materials, answer open-ended questions, and write an essay. *Id.* at 85:11-25. Mr. Garrett was able to successfully complete this program despite several inmates over the years being unable to complete the program due to their inability to read or write well enough. *Id.* at 86:15-20. Toward the end of the program, Mr. Garrett submitted a justification letter that showed a firm grasp of the program's material and clearly expressed the skills Mr. Garrett believed he had learned that would help him make better decisions moving forward. *Id.* at 93:20-94:12. Mr. Garrett also completed an anger management packet consisting of approximately 65 pages during his time in restrictive housing. Dkt. 98 at 125:11-12, 126:9-13. The anger management packet was provided and reviewed by mental health professional Sarah Clarke. *Id.* at

---

[3] Consistent with his general inability to recall specific events that occurred during his time in DWSH, Mr. Garrett testified that he does not recall what he understood the classification reviews to mean, whether he was ever provided classification appeal forms, or whether he requested an appeal form. Dkt. 98 at 26, 33.

125:11-17. The packet was fairly extensive in nature and required Mr. Garrett to answer open-ended questions based upon readings that were provided. *Id.* at 125:25-126:23.

### 3. *Classification appeal process was not a "dead end"*

Mr. Garrett argues that classification appeal decisions were predetermined. But classification appeal process provided relief for several inmates who took advantage of it. Multiple inmates who were in restrictive housing at WVCF during the same timeframe as Mr. Garrett were released from the unit as a result of classification appeals they had filed. Dkt. 98 at 68-2:70:4, 70:10-71:13; exh. 130-132. Executive Director of Classification Jack Hendrix testified that approximately ten to fifteen percent of inmates on department-wide administrative restrictive housing who appealed their placement in restrictive housing between 2017 and 2020 had their appeals granted and were transferred out of restrictive housing as a result. Dkt. 98 at 67:3-15, 80:6-13. Mr. Garrett did not offer any testimony that he declined to file an appeal because he perceived it to be a dead end and in fact, evidence that relief was available was submitted at the hearing.

Instead, the Court accepts Mr. Garrett's testimony that he did not pursue a classification appeal because he felt guilty about the reason he was in DWRH to begin with. Dkt. 98 at 28:14-21 and 30:2-6. There is no credible evidence offered at the hearing that Mr. Garrett failed to pursue a classification appeal because he was misled or intimidated.

Based on these findings of fact, the Court concludes that Defendants have met their burden of establishing that there were additional administrative remedies available to Mr. Garrett that he did not pursue prior to file this lawsuit.

## C. Grievance Process

At all times relevant to Mr. Garrett's complaint the IDOC had an Offender Grievance Process ("Grievance Process") that allows inmates to raise issues about the conditions of their

confinement. Dkt. 78, ¶5. The IDOC policy governing the grievance process and how an inmate can exhaust his administrative remedies using that process is titled IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process. Dkt. 78, ¶6. Inmates in restrictive housing have the applicable grievance and classification appeal processes explained to them during admission and orientation. Dkt. 98 at 94:25-95:3. They can access the grievance and classification appeal forms through their caseworker, other unit team staff, or the law library. *Id.* at 37:22-24, 56:20- 57:14, 78:12-19, 95:17-20. If Mr. Garrett had any issues understanding the policies or completing the relevant forms, he could seek assistance from his assigned caseworker. *Id.* at 33:11-15, 95:21-96:2. In addition, Mr. Garrett's successful completion of the ACT program undermines any concern that his mental faculties prevented him from using the grievance appeal process.

Mr. Garrett did not submit a formal grievance about the conditions of his confinement in DWRH. Dkt. 100 at 3.  Mr. Garrett concedes that he did not successfully complete the Grievance Process with respect to the issues raised in this lawsuit. *Id.*

The only grievance filed by Mr. Garrett from October 2017 to February 2020 was in 2019 and related to his access to an inhaler. Dkt. 78, ¶8; Exh. 102. Mr. Garrett received a formal response, but did not file an appeal. Exh. 103; Dkt. 98 at 18-19. Mr. Garrett never appealed this grievance or filed any additional grievances from October 2017 through February 2020. *Id.* ¶9. Mr. Garrett testified that its possible that he has filed different grievances over the years while in custody but that his memory is unclear. Dkt. 98 at 20.

### D. Availability of Grievance Process

At the hearing, Mr. Garrett testified that he did not attempt to submit any formal grievances expressing his complaints about unsanitary or unsafe prison conditions at WVCF because he feared

10

retaliation and that filing a grievance would jeopardize his chance of being released from DWRH. Dkt. 98 at 30:14–22. He testified that he feared retaliation by WVCF officers because he was aware of other inmates who were subject to harsher treatment by correctional officers for pursuing complaints, as complaints make correctional officers' jobs more difficult. Dkt. 98 at 38:7–39:1.

This testimony was not credible given Mr. Garrett's lack of memory. There was no reliable evidence admitted at the hearing to suggest a fear of retaliation. Dkt. 98 at 38:7-39:10. At most, Mr. Garrett explained that while no one ever made things hard for him, officers might take their time providing cleaning supplies when grievances were filed by an inmate. Dkt. 98 at 41:10-17.

There was no credible evidence submitted during the hearing that the grievance process was not capable of use, that it was a dead end, or that administrators thwarted Mr. Garrett through machination, misrepresentation, or intimidation. Instead, the evidence supports a finding that a grievance process was available to Mr. Garrett, but he failed to use it before filing this action.

Accordingly, the Court concludes that the defendants met their burden to establish that a grievance process was available to Mr. Garrett but went unused. *Wallace v. Baldwin*, 55 F.4th 535, 545 (7th Cir. 2022) (explaining before summary judgment can be entered for failure to exhaust, a district court must find that an inmate's administrative remedies were available).

### III.   Conclusion

For the reasons stated above, Mr. Garrett failed to exhaust his available administrative as required by the IDOC before filing this action. Accordingly, Defendants' affirmative defense is therefore granted. Judgment dismissing this action without prejudice shall now issue. *Ford v.*

*Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice.").

**IT IS SO ORDERED.**

Date: 7/23/2024

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Stephanie Michelle Davis
Office of Attorney General Todd Rokita
stephanie.davis@atg.in.gov

Arie J. Lipinski
Lipinski Law
lipinski@lipinski-law.com

Alexander Thomas Myers
Office of Indiana Attorney General
alexander.myers@atg.in.gov